24CA0293 Serna v Bentley 02-06-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0293
El Paso County District Court No. 23CV314
Honorable Christopher J. Munch, Judge

Francisco Serna and Ajhalei Snoddy,

Plaintiffs-Appellants,

v.

Eric Bentley and Brad Rodenberg,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE HARRIS
Grove and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 6, 2025

Francisco Serna, Pro Se

Ajhalei Snoddy, Pro Se

Philip J. Weiser, Attorney General, Joseph G. Michaels, Assistant Solicitor General, Denver, Colorado, for Defendant-Appellee Eric Bentley

Winget, Spadafora & Schwartzberg, LLP, Derek C. Anderson, Boulder, Colorado, for Defendant-Appellee Brad Rodenberg

¶ 1 This is at least the fifth case filed by plaintiffs, Francisco Serna and Ajhalei Snoddy (former owners), in connection with eminent domain proceedings initiated by the City of Colorado Springs in 2017. Their latest attack is a C.R.C.P. 106 action, brought against defendants Judge Eric Bentley, the judge who presided over the eminent domain case; the City; Kyle Wigington, the City's expert appraiser; and Brad Rodenberg, a representative of an entity that contracted with the City.

¶ 2 The district court dismissed the action for lack of subject matter jurisdiction, and the former owners appeal. We affirm.

## I. Factual Background and Procedural History

¶ 3 The City sought to acquire the former owners' land to construct a public works project. When negotiations failed, the city council held a public meeting at which it adopted a resolution authorizing condemnation of the property.

¶ 4 The City then filed a condemnation petition in district court. *See* § 38-1-102, C.R.S. 2024. In October 2017, after a contested hearing, Judge Bentley granted the City's motion for immediate possession of the property. *See* § 38-1-105(6)(a), C.R.S. 2024. The

1

case proceeded to a valuation trial in April 2023.[1]  *See* § 38-1-105(1)-(2).  At the conclusion of trial, a panel of three commissioners ascertained the property's value at $103,203.75.

¶ 5      The former owners filed a series of post-trial motions.  One motion challenged the 2017 immediate-possession order for lack of subject matter jurisdiction based on an invalid condemnation resolution.  According to the former owners, the city council's resolution was invalid because (1) contrary to Rodenberg's representation to city council, the former owners did not have notice of the meeting at which the resolution was adopted; and (2) Wigington's appraisal failed to follow certain standards, resulting in an unreasonable offer of compensation during the parties' negotiations.  A second motion challenged the valuation, also based on purported defects in Wigington's appraisal.

---

[1] The delay between the immediate-possession hearing and the valuation trial was attributable to an appeal of the district court's summary judgment on valuation, *see City of Colorado Springs v. Serna*, (Colo. App. No. 19CA0856, Aug. 20, 2020) (not published pursuant to C.A.R. 35(e)) (reversing summary judgment), and to the former owners' attempt to remove the case to federal court, *see City of Colorado Springs v. Serna*, No. 1:21-cv-03444-DDD-SKC (D. Colo., June 13, 2022) (unpublished order granting motion to remand).

¶ 6     Judge Bentley denied both motions as untimely and meritless. He then entered final judgment, conveying fee simple interest in the property to the City.

¶ 7     The former owners appealed, reasserting the arguments raised in the post-trial motions. The division rejected those arguments and affirmed the judgment. *City of Colorado Springs v. Serna*, (Colo. App. No. 23CA1710, Sept. 5, 2024) (not published pursuant to C.A.R. 35(e)). It concluded that the owners were not entitled to notice of the city council meeting; regardless, the City's purported lack of authority to condemn the property did not deprive the court of subject matter jurisdiction; and any alleged defects in the appraisal did not render Wigington's expert testimony inadmissible. *See id.* at ¶¶ 22, 27, 48.

¶ 8    While their direct appeal was pending, the former owners filed the C.R.C.P. 106 complaint at issue in this appeal.[2]  The complaint

- alleged that Judge Bentley abused his discretion by denying their post-trial motion challenging the court's subject matter jurisdiction;

- reiterated their argument that the condemnation resolution was invalid because their "receipt of notice was misrepresented" to city council, and the invalid resolution deprived the court of subject matter jurisdiction;

- sought review of all Judge Bentley's orders issued in the case;

---

[2] The former owners also filed multiple other lawsuits challenging the condemnation proceedings.  *See Serna v. City of Colorado Springs*, No. 1:21-cv-939-LY, 2022 WL 17813791 (W.D. Tex. Aug. 26, 2022) (unpublished order dismissing complaint); *Serna v. Bd. of Cnty. Comm'rs*, Civ. A. No. 22–cv–02998–DDD–MDB, 2024 WL 1715003 (D. Colo. Mar. 29, 2024) (unpublished order dismissing complaint); *Serna v. City of Colorado Springs*, Civ. A. No. 1:23-cv-00728-DDD-MDB, 2024 WL 1715004 (D. Colo. Mar. 29, 2024) (unpublished order dismissing complaint); *Serna v. Turner*, No. 1:23-cv-02579, 2024 WL 3329049, at *6 (D. Colo. July 8, 2024) (unpublished order dismissing complaint filed against Judge Bentley and two other judges, the Colorado Springs Assistant City Attorney, and the Federal Highway Administration, and cautioning the former owners that they "must not abuse judicial resources by filing repetitious lawsuits").

- asserted a claim under 42 U.S.C. § 1983 against Rodenberg for "misrepresenting that [they] had received notice of the [city council] meeting"; and

- asserted a claim under 42 U.S.C. § 1983 against Wigington for failing "to perform the required 'cash equivalency' analysis" in his appraisal, which resulted in an unreasonable offer of compensation during negotiations.[3]

¶ 9 The City, Judge Bentley, and Rodenberg moved to dismiss the complaint under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction and, in Rodenberg's case, also under C.R.C.P. 12(b)(5) for failure to state a claim for relief. (Wigington was never served with the complaint.) The district court granted the motions to dismiss. It concluded that a district court lacks jurisdiction to review "the decisions of other divisions of th[e] same [c]ourt," and, because the § 1983 claims were merely "secondary" to the Rule 106 claims, the court also lacked jurisdiction to resolve those claims.

---

[3] The petition also included claims for declaratory judgment and an injunction requiring the City to return the property to the former owners. The former owners do not appeal dismissal of those claims, and, as a result, the City does not participate in this appeal.

## II. Discussion

¶ 10 On appeal, the former owners contend that the district court erred by (1) dismissing their Rule 106 claims against Judge Bentley; (2) dismissing their § 1983 claims against Rodenberg and Wigington; (3) denying them an opportunity to amend their complaint to add a claim challenging the constitutionality of the eminent domain attorney fee statute; and (4) failing to adjust deadlines under C.R.C.P. 121 to accommodate their pro se status.

### A. Rule 106 Claims Against Judge Bentley

¶ 11 Rule 106(a)(4) provides that "relief may be obtained in the district court" when, in any civil matter, "any governmental body or officer or any lower judicial body . . . has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law."

¶ 12 The former owners acknowledge that the rule only permits district court review of a "lower judicial body." But they say that limiting language does not apply here, because Judge Bentley is an "officer," and the district court has jurisdiction to determine whether an "officer" has exceeded his authority.

¶ 13 We discern at least three problems with this argument.

6

¶ 14    First, in construing a rule, we give words their plain meaning and avoid constructions that would render any of the language superfluous or would lead to illogical or absurd results. *Harvey v. Cath. Health Initiatives*, 2021 CO 65, ¶ 16; *People ex rel. Rein v. Meagher*, 2020 CO 56, ¶ 23 (In construing court rules, courts "employ the same interpretive rules that [they] use in interpreting a statute."). The former owners' interpretation reads "lower judicial body" out of the rule: if every judge is an "officer," the term "lower judicial body" is superfluous. And limiting a district court's review to orders of a "lower judicial body," but then allowing the court to review orders of a co-equal judge because the judge is an "officer," makes no sense.

¶ 15    Second, all of the relevant authority goes against the former owners. Our supreme court has consistently and unambiguously held that a judgment is not subject to review by another court "of coordinate jurisdiction." *State v. Pena*, 911 P.2d 48, 57 (Colo. 1996); *see also Colo. Jud. Dep't v. Colo. Jud. Dep't Pers. Bd. of Rev.*, 2022 CO 52, ¶ 53 ("District court judges have no authority to affirm, modify, or reverse each other's decisions . . . because district

7

court judges have equal legal stature."); *People v. Maser*, 2012 CO 41, ¶¶ 12-13 (explaining that because all district courts are "of equal stature," the "only proper forum for review of [a] final judgment of the district court rests with the court of appeals").

¶ 16    Third, a Rule 106 action is, in any event, permitted only when there is no other remedy available. The former owners appealed Judge Bentley's final judgment, and a division of this court carefully reviewed their contentions of error and affirmed. *See Martin v. Arapahoe Cnty. Ct.*, 2016 COA 154, ¶ 23 (review under C.R.C.P. 106(a)(4) is not available when an appeal of the court's order may be pursued); *People v. Adams Cnty. Ct.*, 793 P.2d 655, 656 (Colo. App. 1990) (C.R.C.P. 106(a)(4) "cannot be used as a substitute for prescribed appellate procedures.").

¶ 17    *Swift v. Smith*, 201 P.2d 609 (Colo. 1948), the sole case on which the former owners rely, does not advance their position. In that case, the *supreme court* reviewed an *interlocutory* order of the *district court* — i.e., a lower judicial body. In contrast, the former

owners seek district court review of another district court's final judgment,[4] which they already appealed to this court.

¶ 18    Accordingly, we conclude that the district court properly dismissed the Rule 106 claims against Judge Bentley for lack of jurisdiction.

### B.    § 1983 Claims Against Rodenberg and Wigington

¶ 19    The complaint alleged that Rodenberg and Wigington violated the former owners' constitutional rights to due process and just compensation and their rights under the Uniform Relocation Act — Rodenberg, by "misrepresenting that [the former owners] had received notice" of the 2017 city council meeting, and Wigington, by submitting a flawed appraisal that informed the City's offer during initial negotiations.

¶ 20    True, § 1983 claims "*may* exist separately from a C.R.C.P. 106(a)(4) action." *Bd. of Cnty. Comm'rs v. Sundheim*, 926 P.2d 545,

---

[4] Contrary to the former owners' apparent understanding, Judge Bentley's October 2017 immediate-possession order is not an interlocutory order.  Once final judgment was entered in the case, all of the prior interlocutory orders (including the immediate-possession order) merged into the judgment and became final.  *See Mulberry Frontage Metro. Dist. v. Sunstate Equip. Co.*, 2023 COA 66, ¶ 14.

549 (Colo. 1996) (emphasis added). But we agree with the district court that here they did not.

¶ 21    The Rule 106 claims alleged that Judge Bentley abused his discretion by rejecting the former owners' arguments that Rodenberg's "misrepresentations" and Wigington's flawed appraisal rendered the resolution invalid and thereby deprived the court of jurisdiction. The § 1983 claims are nothing more than restyled Rule 106 claims. The former owners may not avoid the jurisdictional bar in this case merely by attaching a new appellation to the same allegations. *See City of Boulder v. Pub. Serv. Co. of Colo.*, 2018 CO 59, ¶ 20 (the substance of the claim controls, not the appellation applied by the litigant); *see also People v. Sharp*, 2019 COA 133, ¶ 35 (defendant could not avoid his evidentiary burden "simply by repackaging his newly discovered evidence claim as one for ineffective assistance of counsel"); *City of Aspen v. Kinder Morgan, Inc.*, 143 P.3d 1076, 1079 (Colo. App. 2006) (party could not "avoid implicating the ratemaking jurisdiction of the [Public Utilities Commission] by recharacterizing its claims on appeal"); *Bodimetric Health Servs, Inc. v. Aetna Life & Cas.*, 903 F.2d 480,

487 (7th Cir. 1990) ("A party cannot avoid the Medicare Act's jurisdictional bar simply by styling its attack as a claim for collateral damages instead of a challenge to the underlying denial of benefits.").

¶ 22     But even assuming the § 1983 claims were severable from the Rule 106 claims, they were nonetheless subject to dismissal under C.R.C.P. 12(b)(5) for failure to state a claim on which relief can be granted.

¶ 23     To state a claim for relief under § 1983, a complaint must allege, among other things, a violation of the plaintiff's federal constitutional or statutory rights. *See, e.g., Churchill v. Univ. of Colo.*, 2012 CO 54, ¶ 37. It is not enough, however, for the complaint to merely identify a constitutional provision or statute and then summarily assert a violation. Under the plausibility standard adopted in *Warne v. Hall*, 2016 CO 50, ¶ 24, a claim is subject to dismissal unless the complaint's factual allegations are sufficient to "'raise a right to relief "above the speculative level," and provide "plausible grounds"'" to create an inference that the

allegations are true." *Walker v. Women's Pro. Rodeo Ass'n*, 2021 COA 105M, ¶ 37 (quoting *Warne*, ¶ 9).

¶ 24    The complaint alleges that Rodenberg violated the former owners' due process rights by misrepresenting to city council that they had notice of the public meeting at which the condemnation resolution was adopted.[5] But the complaint does not allege that the former owners had a federal constitutional or statutory right to receive notice of the meeting. Nor are there any factual allegations explaining how Rodenberg's supposed misrepresentation to third parties deprived the former owners of notice. *See Mink v. Knox*, 613 F.3d 995, 1001 (10th Cir. 2010) (plaintiffs must state a causal connection between the defendant's conduct and the deprivation of the federal right).

---

[5] The complaint includes a link to the council meeting. *See Peña v. Am. Fam. Mut. Ins. Co.*, 2018 COA 56, ¶ 14 (in resolving motion to dismiss, the court may consider exhibits referenced in the complaint). Although irrelevant for our purposes, we note that what Rodenberg actually said when asked whether the former owners had notice of the meeting was that they were "made aware that we would come [to the city council] through the final offer letter. But I don't know that he has a - - we didn't contact [them] specifically to say 'hey, we're doing this [meeting] today.'"

¶ 25    As for Wigington, the complaint alleges that by submitting a flawed appraisal, he violated the former owners' Fifth Amendment right to receive just compensation for any taking of their property. But the complaint does not allege that the former owners have a federal constitutional or statutory right to "receive a negotiation offer of just compensation" or a federal constitutional or statutory right to an appraisal that adheres to any particular methodology or standards. And the complaint is entirely devoid of any factual allegations explaining how the appraisal deprived them of just compensation. *See id.* In fact, according to the complaint, the problem with the allegedly deficient appraisal was not that it deprived the former owners of just compensation, but that it required them to "litigate against the City to *receive just compensation.*"

¶ 26    Accordingly, we conclude that the district court properly dismissed the § 1983 claims.

C.    Amendment of Complaint

¶ 27    In condemnation actions, property owners are entitled to recover attorney fees "where the award by the court in the

13

proceedings equals or exceeds one hundred thirty percent of the last written offer" made to the owner before the condemnation proceedings commence. § 38-1-122(1.5), C.R.S. 2024.

¶ 28    The former owners filed an untimely motion for attorney fees, which Judge Bentley denied because the court award ($103,203) was not 130 percent higher than the City's final offer ($83,300).

¶ 29    On appeal, the former owners argue that the district court erred by dismissing their complaint before they had an opportunity to add a claim challenging the constitutionality of section 38-1-122(1.5). But they do not allege any prejudice because they fail to explain why they cannot raise the claim in a separate complaint. For that reason, we discern no basis for reversing the district court's judgment and remanding to allow for amendment of the Rule 106 complaint. *See Laura A. Newman, LLC v. Roberts*, 2016 CO 9, ¶ 24 ("[E]rrors in the civil context have long been subject to harmless error review under [C.R.C.P.] 61 . . . which provides that '[t]he court at every stage of the proceeding must disregard any error or defect . . . which does not affect the substantial rights of the parties.'").

### D. Adjustment of Deadlines

¶ 30 During the Rule 106 proceedings, the former owners moved for an order "ensuring timeliness parity for unregistered litigants." As we understand their argument, they contended that C.R.C.P. 121, section 1-15, which sets a deadline for responsive motions based on the initial motion's filing date, disadvantaged pro se litigants who file and receive documents by mail. They proposed to file documents in accordance with C.R.C.P. 5(d) instead, which they said would allow them to file their responsive motions with the court "within a reasonable time after service." Their motion noted that Judge Bentley and the City had agreed to this procedure. The district court denied the motion.

¶ 31 On appeal, the former owners argue that they should have had the benefit of Rule 5's "reasonable time" standard, but they do not allege any prejudice from the court's denial of the motion. *See* C.R.C.P. 61. Indeed, when the former owners requested an

extension of time to file a responsive motion, the district court

granted the request.[6]

### III. Disposition

¶ 32    The judgment is affirmed.

JUDGE GROVE and JUDGE PAWAR concur.

---

[6] According to the former owners, the "timeliness issues stemming from mailing procedures led" to Judge Bentley's failure to review their objection to the City's summary judgment motion. But Judge Bentley's ruling cannot amount to prejudice because, first, summary judgment was reversed, and second, the issue in this appeal is the district court's — not Judge Bentley's — denial of the motion for "timeliness parity."